15239.   McKIBBEN *v.* FOURTH NATIONAL BANK OF MACON.

BELL, J.   1. The cardinal rule in the construction of contracts is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction. Civil Code (1910), § 4266. As to whether a contract is one of suretyship or of guaranty, "as with other contracts, the whole matter is governed by the intention of the parties." *Baggs* v. *Funderburke,* 11 *Ga. App.* 173, 174 (74 S. E. 937). The language which the parties have used will be looked to for the purpose of finding

that intention, which when it is once ascertained will prevail over all other considerations, in determining the nature of the agreement. *Etheridge* v. *Rawleigh Co.*, 29 *Ga. App.* 698, 703 (116 S. E. 903); *Fields* v. *Willis*, 123 *Ga.* 273, 275 (51 S. E. 280).

2. It is true that in order to constitute one a surety his obligation must be "identical with that of the principal" (*Graham* v. *Roberson*, 79 *Ga.* 72, 74, 3 S. E. 611; *Etheridge* v. *Rawleigh Co.*, supra), but identity of obligation does not necessarily mean identity of instrument; and while a surety is usually bound with his principal by the same instrument (*Musgrove* v. *Luther Publishing Co.*, 5 *Ga. App.* 279, 281, 63 S. E. 52), this is not always true.   The form of the contract is immaterial provided the fact of suretyship exists (Civil Code of 1910, § 3541), and one may assume that relation even by an instrument separate and distinct from that of his principal and also subsequent in time. *Baggs* v. *Funderburke*, supra.

3. It was stipulated in the instrument sued on in this case that its "true intent and purpose" was to render the makers thereof liable for any indebtedness of the corporation in which they were stockholders "precisely to the same extent" as if each of them "had duly and regularly indorsed the paper of said corporation," and that they should be jointly and severally liable therefor "as indorsers are liable to the holder of a negotiable instrument under the law merchant." It is clearly manifest from this language and the instrument as a whole that the parties signing it did so with the specific intent to become liable as "accommodation indorsers" or sureties.   Civil Code (1910), § 3541.

(*a*) Applying the rulings of the preceding paragraphs, the makers of the instrument upon which the action in this case was predicated were sureties and not guarantors.   It was therefore unnecessary that the plaintiff should allege that the principal debtor, the corporation, was unable to perform.   Compare *Fields* v. *Shores-Mueller Co.*, 25 *Ga. App.* 395 (1) (103 S. E. 473).

4. Suits against joint obligors or joint promisors residing in different counties may be brought in either county.   Civil Code (1910), § 6541. One of the makers having resided and having been served in the county in which the suit was brought, the court was not without jurisdiction as to the plaintiff in error, although he resided in a different county in this State.

5. It was not necessary that the principal,—that is, the corporation for whose indebtedness the makers of the instrument sued on became liable as sureties,—should be sued in the same action.   "The holder of a joint and several note may sue the obligors jointly or severally, or sue any one of the signers alone.   On such an obligation he may sue the principal and the surety jointly, or at his option he may sue either the principal or the surety alone.   Civil Code (1910), § 3553, 3559; *Reid* v. *Flippen*, 47 *Ga.* 273, 275; *McMillan* v. *Heard National Bank*, 19 *Ga. App.* 148, 151." *Johnson* v. *Georgia Fertilizer Co.*, 21 *Ga. App.* 530 (3) (94 S. E. 850); *Amos* v. *Continental Trust Co.*, 22 *Ga. App.* 348 (2) (95 S. E. 1025).   However, there was no plea or demurrer raising the question of nonjoinder of parties.

6. In a suit against joint and several obligors residing in different counties where the court has jurisdiction of them both when the suit is filed, the

mere fact that the resident defendant is subsequently discharged upon some matter in avoidance not existing at the commencement of the action will not prevent the court from proceeding to judgment against a non-resident defendant. *Daniel* v. *Browder-Manget Co.*, 13 *Ga. App.* 392 (2) (79 S. E. 237). Under this ruling, the court did not lose its jurisdiction over the nonresident defendant because of the bankruptcy (even assuming a discharge therein) of the resident defendant, occurring after the institution of the action.   Regardless of the soundness of the entire ruling contained in the second headnote of the decision just cited, the soundness of so much of it as is applicable to this case is not doubted. Therefore the request of the plaintiff in error, that this decision be reviewed and overruled, must be declined.

(*a*) The rule as to jurisdiction of the nonresident defendant would be otherwise, however, if there was *no joint liability at the time the action was brought*, but even then, if the joint liability appears by the suit, the issue in regard thereto should be determined on the final trial and not on a dilatory plea.   *Williams* v. *Atlanta National Bank*, 31 *Ga. App.* 212 (5) (120 S. E. 658).

7. One of the recited considerations of the instrument declared on was "the agreement on the part of the bank to renew any indebtedness of the corporation now existing for a period of at least 30 days from the maturity thereof."   While the plea alleges that the principal debtor, Akin & Company, "did not secure or obtain any credits or indulgence," it is not shown therein that the plaintiff violated its agreement to extend the same, but the contrary affirmatively appears.   The plaintiff, on April 2, 1923, accepted a note due in 30 days for the existing matured indebtedness of the principal debtor, and even if the note was not so executed as to be binding upon the latter, being signed without authority, it was subject to ratification by it, and in the event thereof would then have been binding as a renewal upon both parties thereto. Whether it was binding upon the plaintiff bank as a renewal or extension of the existing indebtedness, without such ratification by the purported maker, the bank treated it as such, and thus abided by its agreement in the instrument declared on, to renew any existing indebtedness for the space of 30 days.   The plea, therefore, failed to show any failure of consideration, or any breach by the plaintiff.

8. Assuming that the plea sufficiently averred, as against a general demurrer, that the person who executed the note representing the alleged indebtedness of the principal debtor, Akin & Company, was acting without authority in so doing, and thus that the note as such would not be enforceable against the corporation, nor even properly considered as evidence of indebtedness against it, the plea having alleged that this note "represents a balance of $5,000 borrowed by Akin & Company in the year 1919, and $6,000 assumed by Akin & Company to plaintiff," and *the action not being based upon the note itself, but upon a separate writing*, wherein the makers bound themselves to pay to the plaintiff bank "as the same becomes due, any indebtedness of [their principal, Akin & Company] . .   now in existence or that may be hereafter created, whether by note, discount, acceptance, overdraft, indorsement, or in any other form," it is immaterial in this action that the particular note may not have been executed by authority of the corporation, it thus

affirmatively appearing from the plea that Akin & Company was in fact indebted to the plaintiff in a sum equal to that for which the sureties were sued. Compare *Jones* v. *Ezell*, 134 *Ga.* 553, 556, 557 (68 S. E. 303).

9. Applying the above rulings, the court did not err in sustaining the plaintiff's general demurrers to the plea to the jurisdiction and to the defendant's answer, nor in overruling the defendant's demurrer to the plaintiff's suit.

10. The plaintiff in error contends, that, the action being upon an instrument providing for the payment of attorney's fees, the recovery of which is dependent upon giving to the defendant the required statutory notice, and the trial judge having rendered judgment in the case without a jury, the judgment is erroneous because it was not "couched in such language as to indicate that the judge, sitting as a jury, . . found the fact to be that written notice of suit had been as required by law," as was ruled by this court to be necessary, in *Valdosta &c. R. Co.* v. *Citizens Bank of Valdosta*, 14 *Ga. App.* 329 (4) (80 S. E. 913). This court is unable, however, to concur in the construction which the counsel for plaintiff in error places upon the judgment. It appears to be dual in nature, importing a finding upon facts, together with a judgment thereon. This contention, therefore, cannot be sustained either as to the judgment as a whole or even as to the part thereof relating to attorney's fees. See *Elliott* v. *Wilks*, 16 *Ga. App.* 466 (3) (85 S. E. 679).

11. Another contention of the plaintiff in error is that the judgment for attorney's fees is not valid because the plaintiff's allegations of notice to the defendant did not show a compliance with the statute (Civil Code of 1910, § 4252). This was an action by the *obligee* in the instrument declared on, a copy of which was attached, and which provided for the payment of such fees. The petition alleged that the defendants were indebted therefor. The following allegation made in the complaint (certainly in the absence of a special demurrer thereto) sufficiently averred a compliance with the statute with reference to the giving of such notice: "Petitioner shows that more than ten days prior to the filing of this suit it gave written notice to each and all of said defendants of its intention to sue on said contract evidencing said indebtedness to the September term, 1923 [to which the suit was made returnable] of the city court of Macon." *Stocking* v. *Moury*, 128 *Ga.* 414 (2) (57 S. E. 704); *Strickland* v. *Lowry National Bank*, 140 *Ga.* 653 (4) (79 S. E. 539); *Youmans* v. *Moore*, 13 *Ga. App.* 119 (2) (78 S. E. 862); *Reeves* v. *Gower*, 14 *Ga. App.* 293 (2) (80 S. E. 699).

12. No other reasons are urged for reversing the judgment, and, it not being erroneous upon any ground taken, affirmance must follow.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

DECIDED APRIL 24, 1924.

Complaint; from city court of Macon—Judge Gunn. November 5, 1923.

In Bibb county, on June 22, 1923, the Fourth National Bank of Macon brought an action against Thomas N. McKibben, J. H. McKibben, and L. R. Akin, upon the following instrument:

"State of Georgia, Bibb County.—We, the undersigned, stock-holders in the Akin & Co., hereinafter called the 'corporation,' in consideration of the sum of $1 to each of us in hand paid by the Fourth National Bank of Macon, hereinafter called the 'bank,' receipt of which is hereby acknowledged, and in consideration of the credit extended to the said corporation by the bank, and in consideration of the agreement on the part of the said bank to renew any indebtedness of the corporation now existing for a period of at least thirty days from the maturity thereof, do hereby bind ourselves and agree to pay the said bank, as the same becomes due, any indebtedness of the said corporation to the said bank, now in existence or that may be hereafter created, whether by note, discount, acceptance, overdraft, endorsement, or in any other form, together with any renewal thereof, with interest or renewals thereon and all costs of collection, including 10 per cent. attorney's fees.

"This agreement is made and entered into between the under-signed stockholders of said corporation and the bank in order to avoid the necessity and inconvenience of endorsing the evidence of indebtedness of the said corporation to the said bank, and its true intent and purpose is to make the undersigned parties hereto liable for the said indebtedness of said corporation to said bank in all respects and precisely to the same extent as if each of the under-signed parties hereto had duly and regularly endorsed the paper of the said corporation to the said bank, whether indebtedness be represented by note, discount, acceptance, overdraft, endorsement, or any and all other ways, and in the event of liability accruing under this agreement each of us shall be jointly and severally liable to the said bank for the indebtedness of the said corporation as endorsers are liable to the holder of a negotiable instrument under the law merchant. Each of us hereby severally waives and re-nounces for himself any and all homestead and exemption rights either of us and the family of either of us may have under and by virtue of the constitution and laws of Georgia, any other State or the United States, as against any indebtedness that we may have to pay to the said bank by virtue of this instrument or any renewal of said indebtedness, and each of us further waives demand, protest, and notice of demand, protest, and nonpayment, and any and all other formalities which are or might be necessary and proper to make us liable for the payment of said indebtedness,

however the same may be evidenced, if our names were on said paper, or any evidence of indebtedness in the regular and usual manner and form. This agreement shall be binding without any notice to the undersigned of its acceptance or of the making of extension or renewal of any indebtedness to the corporation, and shall continue notwithstanding any parties hereto may cease to be stockholders in the corporation. No further credit is to be extended under this agreement after notice in writing not to do so is served on the bank by any one of the undersigned parties.

"In witness whereof we have hereunto set our hands and seals, this 10th day of March, 1923.

> "Thos. N. McKibben (L. S.),
> "J. H. McKibben (L. S.),
> "L. R. Akin (L. S.)"

The petition alleged: that the corporation Akin & Company had become indebted to the plaintiff upon a note dated April 2, 1923, and due in 30 days, signed by Akin & Company, for the principal sum of $4,900, which remained unpaid, and for which the defendants were liable, together with interest and attorney's fees as provided in the note, by reason of their undertaking as set forth above; that the defendants Akin and Thomas N. McKibben were residents of Bibb county, and that J. H. McKibben was a resident of Butts county. J. H. McKibben filed a plea to the jurisdiction, upon the ground that, both of the other defendants having been adjudicated bankrupts,—Akin before the suit was filed and Thomas N. McKibben *afterwards*,—there was no joint liability upon his part with either of them, and that therefore he was not suable in Bibb county, but that he could be sued only in the courts of Butts county, where he resided. He demurred on the following grounds: No cause of action is set forth; the obligation sued on is one of guaranty, and it is not alleged that the plaintiff proceeded first against the principal, Akin & Company, or that Akin & Company was unable to pay; that the petition shows upon its face want of jurisdiction as to this defendant; that a guarantor cannot be sued jointly and severally in the same action with another guarantor.

Subject to his plea and demurrer, the same defendant filed an answer, the material portions of which were as follows: (a) That the defendant L. R. Akin was not a resident of the county of Bibb

as alleged, but resided in Fulton county. (This defendant was never served.) (*b*) That both of the codefendants had been adjudicated bankrupts (the dates in this connection were not alleged). (*c*) That the obligation sued on "was executed for the purpose of securing any loan of money that said plaintiff might make to Akin & Company, and not for the purpose of paying any debt which Akin & Company owed plaintiff at the time said obligation was executed. This defendant alleges that at the time said obligawas executed, said Akin & Company did not borrow any money or secure anything else of value from plaintiff, and never thereafter borrowed any money or obtained anything else of value from plaintiff; . . that said Akin & Company did not secure or obtain any credits or indulgence, or other benefit by reason of said obligation." (*d*) "This defendant denies that plaintiff furnished said Akin & Company any money at the time said note sued upon was executed, but on the other hand this defendant alleges, that said note sued upon was given in renewal of two notes which became due on the 2d day of April, 1923, and that said note sued upon represents a balance of $5,000 borrowed by Akin & Company in the year 1919, and $6,000 assumed by Akin & Company to plaintiff by Tappin & Company, and that no money was furnished to Akin & Company by plaintiff on said alleged note." (*e*) That the note purporting to have been executed by Akin & Company on April 22, 1923, was not signed by any person or officer having authority to execute it; that under the charter and by-laws of Akin & Company, its notes and obligations could only be signed by its president, or in his absence the vice-president, unless otherwise directed by the board of directors, and that the note in question was signed by the secretary and treasurer without authority from the board of directors. These facts were known to the plaintiff at the execution of the note, and by reason thereof the note is not binding upon Akin & Company, and this defendant is not liable therefor under the obligation sued on.

The court sustained the plaintiff's general demurrers to the plea to the jurisdiction and to the answer, and overruled the defendant's demurrer to the suit, and thereupon entered a finding and judgment in favor of the plaintiff, as follows: "I find for the plaintiff against the defendant, J. H. McKibben, the sum of

$4900 principal, $199.27 interest, and $509.92 attorney's fees. Whereupon it is considered, ordered, and adjudged that the plaintiff, the Fourth National Bank of Macon, do have and recover of the defendant, J. H. McKibben, the sum of $4900.00 principal, $199.27 interest to date, $509.92 attorney's fees, future interest at 8% per annum, and all costs to be taxed by the clerk."

The defendant J. H. McKibben excepted, assigning error upon the judgment and rulings stated. It is recited in the bill of exceptions that after the preliminary rulings, the final judgment was rendered at the appearance term of the court, without a jury and without evidence being submitted; but the only assignment of error upon the final judgment was that it was contrary to law, and that as the erroneous rulings upon the demurrers "entered into and affected the further progress and final result of the case, the said court erred in making, passing, and entering verdict and judgment against J. H. McKibben."

*W. T. Davidson,* for plaintiff in error.
*Jones, Park & Johnston,* contra.